**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE:

CLASSICSTAR, LLC

                                                         CASE NO. 07-51786

DEBTORS


JAMES D. LYON, CHAPTER 7 TRUSTEE
OF CLASSICSTAR, LLC                                      PLAINTIFF

VS:                                                                                        ADV. NO. 09-5155

NEIL BAKER                                                             DEFENDANT


**MEMORANDUM OPINION**

      This matter is before the Court on the Defendant Neil Baker's Motion to Vacate [Doc. 136] a judgment entered against him and in favor the Trustee pursuant to Fed. R. Civ. P. 60, made applicable to this proceeding by Bankruptcy Rule 9024.  Baker argues that despite having filed a Notice of Appeal [Doc. 130] of the Memorandum Opinion [Doc. 117] and Order of Judgment [Doc. 118] entered March 14, 2011, and the Order awarding post-judgment interest entered April 22, 2011 [Doc. 124], this Court has jurisdiction to vacate the judgment pursuant to Rule 60(b) based on "new evidence" allegedly discovered following trial and entry of the Court's judgment.  Baker argues that this "newly discovered" evidence, described more fully below, demonstrates that the judgment entered is based on erroneous facts and should therefore be vacated pursuant to (1) Rule 60(b)(1) on grounds of "mistake, inadvertence, surprise or excusable neglect;" (2) Rule 60(b)(2) as "newly discovered evidence;" (3) Rule 60(b)(3) as "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;" and/or (4) Rule 60(b)(6) to avoid manifest injustice or inequity.  For the reasons

set forth more fully below, the Court shall deny Baker's Motion to Vacate.

**Facts**

The Plaintiff Trustee[1] filed his Complaint against Baker on September 14, 2009, alleging a December 8, 2005 transfer made by ClassicStar, LLC (the "Debtor") to Key Bank, N.A. ("Key Bank") is recoverable by the Trustee from Baker as a fraudulent transfer pursuant to 11 U.S.C. §§548 and 550.  The Trustee's position is that the transfer made by the Debtor to Key Bank was for payment of Baker's loan with Key Bank (used to finance Baker's acquisition of his interest in the Debtor's Mare Lease Program)[2] (the "Key Bank Loan") and the Debtor received no consideration for such payment.  This argument is key to the Trustee's case because the Trustee has the burden under to §548(a)(1)(B) to establish that the Debtor received less than reasonably equivalent value, an element of a constructively fraudulent transfer.

Baker denied the Trustee's allegations and defended on the grounds that the Debtor did receive reasonably equivalent value for the payoff of his Key Bank Loan.  According to Baker, an oral agreement was reached in November 2004 between himself and the Debtor whereby Baker agreed to give up his rights to the prospective foals under the Mare Lease Program and the Debtor agreed to assume the Key Bank Loan, with any additional terms to be determined at a later date.

The matter was tried on January 11, 2011, and the trial focused primarily on these competing theories of reasonably equivalent value.  The Court, after reviewing all the pleadings in the record, considering all evidence presented by affidavits and exhibits, entered its findings

---

[1]  The Debtor filed its voluntary Chapter 11 bankruptcy petition on September 14, 2007.  On April 14, 2008, the Debtor's Chapter 11 case was converted to a Chapter 7.  James D. Lyon was appointed to serve as the Trustee for the Debtor's estate.

[2] The Debtor's business consisted of operating a "Mare Lease Program."  Under this program, the Debtor would sell to an investor an interest in the breeding rights of a thoroughbred mare for one breeding season.  Investors would generally have the right to any resulting offspring.  Investors would purchase mare leases to take advantage of certain tax benefits that were purportedly available as a result of the investment.

of fact and conclusions of law in a Memorandum Opinion [Doc. 117] on March 14, 2011, and held that the Trustee met his burden in proving that the Debtor received less than reasonably equivalent value.  The Court concluded,

> Based on the evidence before the Court, there was no conversion of Baker's mare lease interests nor any evidence that foals were ever born from the pairings.  The evidence shows that December 28, 2005 [sic], Baker received the benefit of the payoff of his Key Bank Loan, whereas the Debtor received nothing of value from Baker in return.  A payoff of $801,558.70 in exchange for nothing is not reasonably equivalent value.  Thus, the Trustee has met his burden of proof in showing the Debtor received less than reasonably equivalent value in return for the payment of $801,558.70.

An Order of Judgment [Doc. 118] was also entered that same day.  Shortly thereafter, the Court entered an Order on April 22, 2011, awarding the Trustee post-judgment interest, but denying the Trustee's request for pre-judgment interest, costs, and attorney's fees [Doc. 124].

Baker thereafter filed a notice of appeal to the district court on May 4, 2011 [Docs. 130 and 131] wherein he appealed the Memorandum Opinion and Order of Judgment, as well as the Order awarding post-judgment interest.  After filing the Notice of Appeal, Baker then filed the present Motion to Vacate based on "newly discovered" evidence.

According to Baker, following entry of the Memorandum Opinion and Order of Judgment, the Trustee noticed a deposition in another adversary proceeding, *Lyon v. Romanowski Thoroughbreds, LLC*, Adversary Proceeding No. 09-5149 (the "*Romanowski*" proceeding) wherein Baker's counsel was also engaged.  During the course of that deposition, Baker's counsel learned that half of the amount of loan proceeds provided to a borrower from Key Bank for participation in the Mare Lease Program was placed in a certificate of deposit at Key Bank as collateral for the loan.  In response to this information, Baker's counsel subpoenaed documents from Key Bank on April 12, 2011. The documents produced by Key Bank in response to that subpoena revealed the existence of a collateral account held by Key Bank on the Debtor's behalf (the "Reserve Account") and an agreement by the Debtor to purchase the loan at issue in the *Romanowski* proceeding.  Baker's counsel then subpoenaed additional

3

documents from Key Bank specifically concerning the Reserve Account and loan purchase/assignment referenced in the first production. The second production revealed an account statement for the Reserve Account indicating that on November 10, 2003, a deposit of $393,258.00 was made into the account with the notation "Deposit to Account Neil Baker Loan Disbursement." This number is approximately half the value of the loan proceeds provided to Baker by Key Bank for his participation in the Mare Lease Program. The discovery of this fact caused Baker's counsel to believe that Baker's Key Bank Loan was governed by a similar arrangement.

This discovery spurred Baker's counsel to search through four discs of documents previously produced by the Trustee in the Baker litigation while further subpoenaing documents from Key Bank. On May 10, 2011, Key Bank responded to the subpoena with a third production of documents. In its third production, Key Bank produced a stack of documents that included a fully executed Loan Purchase Agreement (the "Purchase Agreement") between the Debtor and Key Bank. As part of the Purchase Agreement, the Debtor and Key Bank agreed that half of any money loaned to a borrower for purchase of a mare lease interest would be transferred to a "Reserve Account" administered by Key Bank for the Debtor, with the funds serving as security for the borrower's repayment obligation. Further, if a borrower defaults on a Key Bank loan, then on demand of Key Bank, the Debtor will purchase the loan from Key Bank for the full amount due and owing on the note plus any "default interest" and any additional costs incurred by Key Bank. The Purchase Agreement further provides that Key Bank, at its discretion, may draw any amount due under this provision from the Reserve Account. The Purchase Agreement does not mention Neil Baker.

Finally, on May 16, 2011, after again reviewing the documents previously produced in discovery by the Trustee, Baker's counsel located the actual Loan Sale and Assignment Agreement related to Baker (the "Baker Loan Assignment") among the documents produced on

4

the four discs provided by the Trustee.  Included with the Baker Loan Assignment was a default notice sent to the Debtor demanding purchase of the Baker loan and a handwritten note referencing Baker and "Sioux Breeder" loans.  After discovery of the Baker Loan Assignment and the accompanying documents, Baker's counsel again reviewed the Reserve Account produced by Key Bank, wherein she found a negative entry on December 14, 2005, for $1,554,090.37 labeled "Sioux Breeder Loan Payoff."

The Baker Loan Assignment was produced by the Trustee in discovery a year prior to defense counsel's discovery of it.  Baker's counsel admits that she "simply missed" the Baker Loan Assignment in her "extensive review" of the discovery documents from the Trustee.  As for the Reserve Account and Purchase Agreement, Baker states this information was not produced in discovery and Baker's first possession of these documents came from the Key Bank production in the *Romanowski* proceeding.  The Trustee admits that he did not produce the Purchase Agreement in discovery despite counsel's possession of these documents pursuant to a document production made by the defendants in the related multi-district litigation,[3] but has stated that the statements related to Baker from the Reserve Account were produced.[4]  Neither the Trustee nor his counsel explained their failure to produce the Purchase Agreement despite having it in their possession during the course of this litigation, except to suggest that the search terms used did not yield this document as a result.  Baker does not accuse the Trustee of intentionally withholding this information, but argues that the Trustee should have known of its existence and produced it in response to Baker's discovery requests.  Baker's counsel has stated in her briefs that Baker was unaware of the agreement to purchase his loan and blames

---

[3]  The multi-district litigation refers to the case pending in the United States District Court for the Eastern District of Kentucky, Lexington, MDL No. 1877, and captioned *In re ClassicStar Mare Lease Litigation*.

[4]  The Trustee initially admitted that he did not produce either the Purchase Agreement or the statements from the Reserve Account.  The Trustee later supplemented the record with an affidavit by Trustee's counsel that stated upon further review, the Trustee has determined that it actually did produce the

5

the Debtor's "frauds it perpetuated on all Mare Lease Participants."

It is Baker's position that the Reserve Account, Purchase Agreement, and Baker Loan Assignment are evidence of the Debtor's purchase of Baker's Key Bank Loan rather than a payoff. Baker argues that this evidence shows that the Debtor received reasonably equivalent value and that Baker did not receive the benefit of any bargain as his obligations under the note were never extinguished. Thus, Baker has moved for relief from the judgment pursuant to Rule 60(b).

## Issues and Discussion

### A.    Jurisdiction

As an initial matter, the first issue is whether this Court has jurisdiction to rule on Baker's Motion to Vacate after an appeal has been filed. There is no dispute that an action to recover a fraudulent transfer is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(H) over which this Court has jurisdiction pursuant to 28 U.S.C. §1334. Venue is also proper pursuant to 28 U.S.C. §1409. But the filing of a notice of appeal operates to transfer jurisdiction of the case to the court of appeals, here the district court, and the trial court is thereafter without jurisdiction except to act in aid of the appeal. *See Hogg v. United States*, 411 F.2d 578, 580 (6th Cir. 1969). Thus, this Court must first determine it has jurisdiction before proceeding to the merits of the motion.

In the Sixth Circuit, the authority to relieve a party from final judgment under Rule 60 belongs to the trial court. *See Adkins v. Jeffreys*, 327 Fed. Appx. 537, 539 (6th Cir. 2009); *LSJ Inv. Co, Inc. v. O.L.D., Inc.*, 167 F.3d 320, 324 (6th Cir. 1999); *First Nat'l Bank of Salem, Ohio v. Hirsch*, 535 F.2d 343, 345-346 (6th Cir. 1976). The proper procedure following an appeal requires that the motion to vacate be presented to the trial court. If the trial court is inclined to grant the motion and so indicates, then the movant/appellant must make a motion in the

Reserve Account documentation.            6

appellate court for remand of the case so the trial court may grant a new trial. Otherwise, the trial court may deny the motion without leave from the appellate court and the appeal will be considered in regular course. *Id.* Because this Court will deny Baker's Motion to Vacate, it has jurisdiction to enter such order without consent by the district court.

### B.     Timeliness

To prevail under a Rule 60(b) motion, a party must first show that the motion was timely filed. Rule 60(b) provides that a motion must be made within a "reasonable" time and "for reasons (1), (2), and (3), no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). A reasonable time is before irrevocable acts have occurred and before other persons can be injured by the movant's inaction, thereby allowing the court to undo that which was done. *In re Johnson*, 13 B.R. 342, 348 (Bankr. D. Minn. 1981).

Baker's counsel acted quickly in gathering the information upon discovery of a possible similarity in the arrangement between Key Bank and the Debtor with regards to Baker's Key Bank Loan and the *Romanowski* proceeding. She also acted quickly by bringing this information to the Court's attention by filing the motion to vacate (1) within eleven days of discovery of the information; (2) within a little over two months following entry of the Memorandum Opinion and Order of Judgment; and (3) within a month following the entry of the Order for post-judgment interest. No irrevocable acts have occurred and there is no injury as a result of inaction. Moreover, the motion has clearly been filed within the one year time period set for motions based on Rule 60(b)(1), (2), and (3). The Motion to Vacate is therefore timely.

### C.     Rule 60(b)(1) – Excusable Neglect

Baker argues that the Court should vacate the judgment because of a mistake as to the facts presented at trial that amounts to excusable neglect. Rule 60(b)(1) allows relief from a judgment for "mistake, inadvertence, surprise or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Court must look at 3 factors to determine excusable neglect: (1) whether the party seeking

7

relief is culpable; (2) whether the party opposing relief will be prejudiced; and (3) whether the party seeking relief has a meritorious claim or defense. *See Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003); *Rogan v. Cenlar, FSB (In re Anderson),* 2006 WL 3885125, *2 (Bankr. E.D. Ky. Sept. 29, 2006).

The culpability of the moving party must first be determined before the elements of prejudice or meritorious defense. *See Williams*, 346 F.3d at 613. A party's conduct is culpable if it "displays either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Id.*

The question here is whether the failure to discover the Reserve Account, Purchase Agreement, or Baker Loan Assignment is excusable. Baker's counsel admits that she failed to locate the Baker Loan Assignment despite it being produced by the Trustee. This is the key document that ties Baker's new defense together as it is the only document that can in and of itself potentially prove that Baker's loan was purchased by the Debtor from Key Bank and assigned to the Debtor. It appears that Baker's counsel also had in her possession the statements from the Reserve Account as well related to Baker and failed to discover them. While Baker's counsel attempts to blame her failure to discover this information on the Trustee's document production, which she describes as "200,000 plus pages of disorganized, un-indexed documents," the focus under a Rule 60(b)(1) analysis is the movant's conduct, not the opposing party's conduct. Further, none of the case law cited by Baker supports Baker's contention that excusable neglect exists where both parties overlooked evidence in existence and available throughout the course of litigation. Counsel failed to locate documents directly related to her client that were produced to her a year ago despite a "diligent" review of the documents. The failure to locate what was in Baker's possession for a year is not excusable under Rule 60(b).

Moreover, while neither Baker nor his counsel had in their possession the Purchase Agreement, this document (as well as the other documents at issue) has clearly been in the

8

possession of Key Bank, which has always been a relevant entity in this adversary proceeding. Baker fails to explain why he waited until after judgment was entered to finally subpoena documents from Key Bank. While Baker argues that he was not aware of the Reserve Account and Purchase Agreement, or even of the purchase and assignment of his own loan with Key Bank, this does not excuse Baker's failure to make a simple discovery request through subpoena to Key Bank. A simple subpoena during discovery, which would have been logical in that the Key Bank Loan and the payoff of that Loan have been at issue since the inception of this litigation, would have likely led to the discovery of this information, even without knowledge of the Reserve Account or the Purchase Agreement between the Debtor and Key Bank.[5]

A diligent review of the documents produced or a subpoena of all documents related to Baker's Key Bank Loan would have resulted in discovery of this information. The Supreme Court has held that clients are responsible for the acts and omissions of their attorneys. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) (under our system of representative litigation, a party cannot avoid consequences of conduct of his or her freely chosen representative); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-634 & n.10, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) (the district court did not abuse its discretion in dismissing the case when a lawyer failed to appear at a conference, because "each party is deemed bound by the acts of his lawyer-agent"). Baker is bound by the failure of his counsel to (1) subpoena existing documents from Key Bank that would have revealed this information or (2) to discover the Baker Loan Assignment and Reserve Account in information produced by the Trustee in discovery. This behavior does not amount to

---

[5] Baker again blames the Trustee for failing to produce these documents in discovery despite discovery requests that would have captured these documents. But to the extent that Baker was unsatisfied with the Trustee's production, Baker could have sought the court to compel production pursuant to Bankruptcy Rule 7037 and did not. Furthermore, while the Court does not condone the Trustee's failure to produce information that may be relevant and not privileged, this does not erase the fact that Baker could have acquired this information by subpoena and did not do so until after a judgment was entered.

excusable neglect and thus Baker is not entitled to relief under Rule 60(b)(1).

      **D.    Rule 60(b)(2) – Newly Discovered Evidence**

Baker further argues that he is entitled to relief under Rule 60(b)(2) because the Reserve Account, Purchase Agreement and Baker Loan Assignment are collectively "newly discovered evidence." Rule 60(b)(2) grants relief from a judgment where a party obtains "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). To succeed in vacating the judgment pursuant to Rule 60(b)(2), Baker must prove (1) he exercised due diligence in obtaining the information; (2) the evidence is material and controlling; and (3) the information would have produced a different result if presented before the original judgment. *See Watts v. Fed. Express Corp.*, 52 Fed. Appx. 819, 820 (6th Cir. 2002); *see also O'Bryan v. Consol Energy, Inc.*, 2010 WL 4053533, *1 (E.D. Ky. Oct. 14, 2010).

If the evidence is "in the possession of the party before the judgment was rendered" it is not "newly discovered." *See Comerica Bank v. Bressler (In re Bressler)*, 2005 WL 1177908, *1 (Bankr. E.D. Mich. 2005) (citing 11 Wright, Miller, & Kane, FEDERAL PRACTICE & PROCEDURE, Civil 2d §2859 (West 1995)). Baker had the Baker Loan Assignment and the Reserve Account in his counsel's possession prior to the trial and entry of the judgment. This evidence is therefore not "newly discovered."

The Purchase Agreement was not in Baker's possession prior to trial. But it was accessible to Baker if counsel had exercised due diligence in obtaining the information. A subpoena to Key Bank would have uncovered this information and Baker's failure to subpoena any of these documents until after judgment was entered does not convince the Court that Baker exercised "reasonable diligence" as required by the Rule.

Furthermore, as to the second and third elements required to satisfy Rule 60(b)(2), Baker's argument that this evidence is material and "would have produced a different result" is

10

not persuasive. The evidence, and particularly the Baker Loan Assignment, is material in that it relates to the nature of the December 8, 2005, transfer that is at issue. But the mere existence of the Reserve Account, Purchase Agreement and Baker Loan Assignment does not prove that the Debtor received reasonably equivalent value.

As the Trustee points out, there is no evidence Key Bank used the funds in the Reserve Account in satisfaction of Baker's Key Bank loan whereas the evidence at trial showed the Debtor paid the full amount of the loan from its operating account. Furthermore, there is no evidence that Baker ever intended to pay or the Debtor intended to collect on Baker's loan. Baker candidly admits that he believed the Debtor paid off his loan with Key Bank and is surprised to find that his loan was instead assigned to the Debtor. Baker has not proven that this evidence, while perhaps material, would have change the outcome at trial.[6] Baker therefore cannot succeed under Rule 60(b)(2).

### E.   Rule 60(b)(3) – Fraud, Misrepresentation or Misconduct

Rule 60(b)(3) provides a judgment may be vacated for "fraud, misrepresentation or other misconduct of an adverse party." Rule 60(b)(3) requires some showing of "odious behavior on the non-moving party." *Jordan v. Paccar, Inc.*, 97 F3d. 1452, *7 (6th Cir. 1996) (Table) (unpublished). "Fraud cannot be unintentional, and the use of the prefix "mis-" in both "misrepresentation" and "misconduct" also suggests that the moving party under the rule must show that the adverse party committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding question." *Id.* at *6. Thus, the moving party must demonstrate by clear and convincing evidence that the non-moving party engaged in "deliberate or reckless misbehavior." *Id.* at *8.

---

[6] Even if the evidence were conclusive, Baker's failure to meet the first element under Rule 60(b)(2) prevents him from finding relief under this section. *See* 12 MOORE'S FEDERAL PRACTICE, Civil, §60.42 (Matthew Bender 2011) (*citing Central States, S.E. and S.W. v. Central Cartage*, 69 F.3d 1312, 1314-1315 (7th Cir. 1995) ("We therefore hold that there is no exception to Rule 60(b)(2) for 'conclusive' evidence' ")).

11

In the Sixth Circuit, the moving party does not have to demonstrate prejudice to meet this burden. *Id.* But once the moving party proves by clear and convincing evidence that the non-moving party acted deliberately or recklessly, then the non-moving party may demonstrate by clear and convincing evidence that the misbehavior has no prejudicial effect on the outcome to rebut the presumption of prejudice. If the non-moving party can rebut the presumption, relief shall not be granted. *Id.*

Baker does not contend that the Trustee intentionally withheld any information. Rather, Baker argues the Trustee's misrepresentation, regardless of whether it is innocent or without a guilty conscience, is sufficient grounds for this Court to grant him relief from the judgment under Rule 60(b)(3). Baker relies on *Platsis v. E.F. Hutton & Co.*, 946 F.2d 38, 41-42 (6th Cir. 1991) to support this argument. But the Sixth Circuit in *Platsis* doesn't consider Rule 60(b)(3); rather, the case is based on an appeal of a judgment related to an alleged violation of securities law. *Platsis* is cited, though, in the Sixth Circuit's discussion of Rule 60(b)(3) in *Jordan v. Paccar, supra*, as an example of "misrepresentation that can be interpreted as an affirmative misstatement." *Jordan*, 97 F.3d at *6. But the court in *Jordan* did not conclude that an innocent misrepresentation is enough to vacate a judgment under Rule 60(b)(3). Rather, *Jordan* clearly stands for the proposition that the moving party must prove by clear and convincing evidence intentional or reckless behavior. *Id.* at *8.

Baker also argues that the Trustee's failure to disclose the Reserve Account (which the Trustee's counsel has subsequently testified that she did disclose in discovery) and Purchase Agreement amounts to such reckless behavior that is actionable under Rule 60(b)(3). Baker cites to *Abrahamsen v. Trans-State Exp., Inc.,* 92 F.3d 425 (6th Cir. 1996) in support. In *Abrahamsen*, defense counsel violated discovery orders by not turning over a statement made by the defendant that concerned the cause of an accident and would have resulted in a verdict

finding the defendant one hundred percent liable had the statement not been withheld.  The facts of that case turned on the fact that (1) the plaintiff's counsel specifically requested that such statements be produced and none were produced; (2) the defendant affirmatively testified that he made no such statement at trial; and (3) the defendant's attorney knew of this statement during the course of litigation, violated discovery by not turning the information over to the plaintiff's counsel, and ultimately assisted in the defendant's perjury on the stand.  *Id.* at 427-428.  For these reasons, the court vacated the judgment pursuant to Rule 60(b)(3).

The decision in *Abrahamsen* turns on counsel deliberately withholding key information requested in discovery and assisting his client in committing perjury.  The facts in *Abrahamsen* are distinguishable from the facts herein. The Trustee produced the Baker Loan Assignment and apparently the Reserve Account statements as well.  There is no evidence that the Trustee intentionally withheld the Purchase Agreement.  While the Sixth Circuit stated in *Jordan* that the "other misconduct" portion of Rule 60(b)(3) "could" reach "accidents that should have been avoided, for instance a reckless approach to searching one's files for discoverable material," *see Jordan*, 97 F.3d at *7, the Court does not find based on the facts as presented by Baker and the Trustee that the Trustee's failure to disclose the Purchase Agreement rises to the level of such reckless action on the Trustee's part.  Baker has produced no evidence of any deliberate or "odious" conduct by the Trustee.  None of the case law cited by Baker holds that a failure to produce documents requested in discovery, without affirmative culpable conduct on the part of the offending party and/or his counsel, is sufficient grounds to rise to the level of recklessness under Rule 60(b)(3).  Thus, Baker is not entitled to relief under Rule 60(b)(3).[7]

---

[7] Even if Baker did prove by clear and convincing evidence that the Trustee acted recklessly in its document production, the Court cannot find that the production of these documents would result in a different outcome.  The Court remains mindful that both the Reserve Account and Purchase Agreement could have been discovered if Baker had exercised due diligence in subpoenaing the documents from Key Bank.  *See U.S. v. Tanoue*, 165 F.R.D. 96 (D. Hawai'I 1995) (denying a motion made under Rule 60(b)(3) under the assumption that even if the government committed a fraud, it could have been discovered by

F.  **Rule 60(b)(6) – The "Catchall" Provision**

The "catchall" of Rule 60(b)(6) for "any other reason that justifies relief" is to be applied only in exceptional or extraordinary circumstances not addressed by the first five numbered clauses of the rule.  *See Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990).  *See also In re Brown*, 413 B.R. 700 (6th Cir. B.A.P. 2009).  Since Baker's request for relief could be considered under Rule 60(b)(1), (2), and (3), Rule 60(b)(6) does not apply.  *See also* 12 MOORE'S FEDERAL PRACTICE, Civil, §60.48 (Matthew Bender 2011) (If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)); 11 FED. PRAC. & PROC. CIV. §2864 (2d ed. 2011).

This is particularly true where a motion made pursuant to Rule 60(b)(6) is based on facts in existence at the time the judgment was entered.  *See Graham v. Eckel (In re Eckel)*, 331 B.R. 742, 744 (Bankr. N.D. Ohio 2005) (holding that a party is not entitled to relief under Rule 60(b)(6) where facts relied upon were in existence at time of entry of dismissal order).  There is a strong policy in favor of the finality of judgments.  A Rule 60(b) motion is not an substitution for an appeal.  *Id.* at 744.

## Conclusion

Based on the foregoing findings of fact and conclusions of law, Baker's Motion to Vacate [Doc. 136] shall be DENIED.  A separate order shall be entered accordingly.

Copies to:

Alisa E. Moen, Esq.

---

respondent's due diligence before or during the proceeding).  Moreover, as Trustee has pointed out, neither document on its face is proof that Baker's loan was purchased and assigned.

14

Taft McKinstry, Esq.

Jana S. White, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

***The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.***

**Signed By:**
***Joseph M. Scott, Jr.***
**Bankruptcy Judge**
**Dated: Saturday, June 18, 2011**
**(jms)**
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~